Edith MARKSTONE and Herbert S. Markstone, her husband,

v.

ALBERT EINSTEIN MEDICAL CENTER a/k/a and d/b/a Albert Einstein Medical Center, Northern Division.

Civ. A. No. 72-978.

United States District Court, E. D. Pennsylvania.

April 3, 1973.

5. For other cases reaching similar results see the collection in 34 A.L.R.2d 919.

David C. Harrison, Philadelphia, Pa., for plaintiffs.

Peter P. Liebert, 3rd, Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

On March 14, 1971 the plaintiff, Edith Markstone allegedly fell as she was walking on the defendant's driveway toward its parking lot. Mrs. Markstone was at the hospital along with her husband and two of her uncles, Samuel Weiss and Arthur Weiss, to see a plaque which was made for another uncle, Doctor Benjamin Weiss. The accident occurred at 3:30 P.M. and the weather was clear.

Mrs. Markstone stated in her deposition which was taken on July 13, 1972 that her left shoe heel had caught in a crack in the macadam. She could not remember the depth of the crack because she was too excited. However, in her deposition, Mrs. Markstone did relay the following information about her accident:

Q. When you were walking along with your uncle, Samuel, you said he was on your left?

A. No; he was on my right.

Q. Immediately ahead of you was your uncle, Arthur; is that correct?

A. Yes, I don't know if he was in front of me or my other uncle, but he was in front of us.

Q. How far in front of the two of you was he?

A. Oh, I would say he was about six or seven feet ahead of me.

Q. In what direction were you looking as you were walking along before you fell?

A. Looking towards the parking lot, because there were cars coming. I was sort of scanning this whole area.

Q. Were you looking down along the way that you were walking at all?

A. Well, I don't know exactly how I was looking, but I was looking ahead. I was just sort of watching to see if there were any cars coming.

Q. Were you looking at the pavement along which you were walking?

A. Well, I would say just like I normally do. Just the way I always walk, you know, when I am looking ahead.

Q. Did you observe anything in the area where you fell before you fell?

A. No, sir.

Q. Was there anything to obstruct your view as you were walking along? Was there anything obstructing your view of the pavement?

A. No, there was not.

Herbert Markstone, Mrs. Markstone's husband, a retired project engineer, testified in his deposition that he was with his wife at the time of the accident. The day after the accident Mr. Markstone went back to the driveway and he noticed that one side of the crack was at a different level than the other side, at least an eighth of an inch difference. There was also a depression or hole which was at least an eighth of an inch to the size of a quarter or a half dollar.

Mr. Syd Raymond, the defendant's parking lot attendant, was deposed and he stated that he had been employed for nine years as the parking lot attendant. Mr. Raymond knew of the crack for approximately one year; however, he did not report the crack to anyone because he did not think it was dangerous.

In addition to the depositions, four photographs of the scene of the accident which were identified by plaintiff in her deposition were attached to defendant's present motion. The photographs show that the crack is approximately eight feet long.

The defendant has filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendant raises two issues. First, is a one eighth inch drop in the level of a driveway at a seam or crack sufficient evidence of a defect to permit the case to go to a jury?

The two latest Pennsylvania Supreme Court decisions in this area are Massman v. Philadelphia, 430 Pa. 99, 241 A. 2d 921 (1968), and Teagle v. Philadelphia, 430 Pa. 395, 243 A.2d 342 (1968). *Massman, supra,* affirmed the opinion of President Judge Jamieson, Court of Common Pleas, Philadelphia County, as reported in 44 Pa.Dist. & Co.2d 636 (1967). The lower court in *Massman, supra,* held that in an action against the defendant for personal injuries resulting from plaintiff's fall while walking through City Hall courtyard when the heel of her shoe caught in a piece of irregular broken cement about one half inch deep and twenty-eight inches long, defendant's motion for judgment n. o. v. after a verdict for plaintiff will be refused where based on the ground that the defect in the walkway was so trivial as not to be actionable.

Judge Jamieson quoted the Court in Breskin v. 535 Fifth Avenue, 381 Pa. 461, 113 A.2d 316 (1955), where it stated:

What constitutes a defect sufficient to render the property owner liable must be determined in the light of the circumstances of the particular case, and "except where the defect is obviously trivial, that question must be submitted to the jury". . . . "But 'there is a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the circumstances. To hold otherwise would result in the court ultimately fixing the dividing line to the fraction of an inch, a result which is absurd' ". . . . No definite or mathematical rule can be laid down as to the depth or size of a sidewalk depression necessary to convict an owner of premises of negligence in permitting its continued existence. . . .

In *Teagle, supra,* the plaintiff was injured as a result of stepping into a hole which was thirty-six inches long, two feet wide and four to five inches deep filled with black water, and also introduced was a photograph of the hole with a ruler stuck into it with a measurement indicating a depth of one and one-half inches without an explanation of the photograph; the Court held that the depth of the hole was a question for the

jury. Mr. Justice Musmanno, writing for the majority, beginning on page 398, 243 A.2d on page 344 stated:

> The trial judge presented both sides of the controversy to the jury in a charge luminous with clarity. He said, inter alia: "You have to consider all the surrounding circumstances in regard to this hole. This is an alleged defect, and before liability attaches to the City, you should consider the depth of the hole, the size of an obstruction constituting the impediment, and consider whether all the particular facts of this case are sufficient to indicate that an unsafe condition was existing here, and that this was due to the negligence of the City of Philadelphia."

In the present case, the defendant contends that (1) the mere fact that a driveway has a crack in it with a one eighth inch drop is not in itself negligence, nor (2) is the mere happening of the accident negligence and (3) as a matter of law, the depth is too trivial for the case to be submitted to a jury.

In *Teagle, supra,* Mr. Justice Musmanno, on page 397, 243 A.2d on page 343 stated:

> The defendant claims that the City should not be liable for a trivial depression in its public thoroughfares. The Courts have not declared what absolute minimum depth is required in a fissure in the street to establish negligence on the part of the municipality for allowing it to remain unrepaired. Nor can there be a judicial pronouncement on the subject because obviously negligence invariably depends on a number of concatenating circumstances.

Initially, the Pennsylvania courts have not set down any mathematical computation in defining what the absolute minimum depth must be present for a depression to be considered trivial and so this Court cannot impose any minimum standard upon the Pennsylvania Courts. This Court is in complete accord with Mr. Justice Musman-

no's last sentence in the aforementioned quote. It is impossible to set down any mathematical standard for a depression to be considered trivial. We must look to the circumstances of each case and not to any mathematical computation of the depth of the depression. Therefore, the depth of the depression must be considered by the fact finder and not by the Court on a Motion for Summary Judgment.

The defendant's second contention for granting its motion is that the plaintiff, Edith Markstone, must have been contributorily negligent as a matter of law.

In Beil v. Allentown, 434 Pa. 10, 12, 252 A.2d 692, 694 (1969), the Pennsylvania Supreme Court stated the long-standing rule in this area:

> Appellant's testimony showed that she stepped with her left foot onto the sewer cover, then twisted her head and body around to look west up Washington Street to see if any traffic was coming. Still turned partly around, she took another step on the sewer cover with her right foot and then about a half step with her left when she fell. The Pennsylvania cases clearly hold that such conduct constitutes contributory negligence. One who, in broad daylight, walks into an obvious defect in a sidewalk is presumptively negligent and the burden is upon that person to show conditions outside of himself which prevented his seeing the defect or which would excuse failure to observe it. McDonald v. Mars Borough, 371 Pa. 625, 92 A.2d 199 (1952); Leson v. City of Pittsburgh, 353 Pa. 207, 44 A.2d 577 (1945); Lerner v. City of Philadelphia, 221 Pa. 294, 70 A. 755 (1908); Walsh v. City of Philadelphia, 175 Pa.Super. 622, 106 A.2d 851 (1954). Appellant has failed to show any external conditions which prevented her seeing the defect or which would excuse her failure. The observation of traffic conditions was not a condition external to appellant. In Allshouse v. Wilkinsburg Borough, 343 Pa. 323, 324, 22 A.2d 756, 757 (1941), this

Court held that plaintiff "was bound to see what was plainly before him and similarity of color of the sections of the sidewalk and observation of traffic conditions in a highway which he was approaching could not excuse him." . . . .

See Lang et vir v. Butler, 441 Pa. 331, 271 A.2d 338 (1970); Knapp v. Bradford City, 432 Pa. 172, 247 A.2d 575 (1968) and Cerino v. Philadelphia, 435 Pa. 355, 257 A.2d 571 (1969).

██ The plaintiff contends that she was distracted because she also was watching out for vehicles which were necessarily travelling down the same path and this distraction would be a matter for the fact finder. However, this issue was before the Pennsylvania Supreme Court in *Allshouse, supra,* and the Court dismissed this argument and affirmed the compulsory non-suit which the trial court had entered.

In addition, the plaintiff contends that she was walking six or seven feet behind her husband and uncle which, to some extent, might have screened the hole from the plaintiff's view. In Kresovich et vir v. Fitzsimmons, 439 Pa. 10, 264 A.2d 585 (1970), the Court stated that where plaintiff looked up and saw an elderly man within two feet in front of her; that plaintiff stepped to the left to avoid the man and tripped on an uneven block of cement; it was held that the evidence established as a matter of law that the plaintiff was contributorily negligent.

In the case at bar, Mrs. Markstone stated in her deposition that there was nothing which obstructed her view of the pavement. Also, the two people were approximately six feet in front of her. Relying on *Kresovich, Allshouse* and *Beil, supra,* it is evident that Mrs. Markstone was contributorily negligent as a matter of law. Moreover, Mrs. Markstone has not met her burden of proof which would show any external or outside condition which prevented her from seeing the defect. See *McDonald, Leson, Lerner* and *Walsh, supra.*